FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAY 21  PM 3: 34

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **ELLIS McCLELLAN** | **CIVIL ACTION** |
|  | **NO. 00-0342** |
| **VERSUS** | **SECTION "C"** |
|  | **JUDGE GINGER BERRIGAN** |
| **HOEGH LINES** | **DIVISION (4)** |
|  | **MAGISTRATE JUDGE** |
|  | **KAREN WELLS ROBY** |

## MOTION TO EXCLUDE EXPERT TESTIMONY OF
## DR. CORNELIUS E. GORMAN AND GEORGE DUFFY

NOW INTO COURT, through undersigned counsel, comes defendant, who urges this Court

to exclude the testimony at trial of expert witnesses Cornelius E. Gorman and George Duffy. The

basis for this motion, as set forth in defendant's accompanying memorandum, is that the testimony

of these witnesses fail to satisfy the criteria set forth by the United States Supreme Court in *Daubert*

*v. Merrell Dow Pharmeceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

1

Fee
Process
X  Dktd
CtRmDep
Doc. No. 51

Respectfully submitted:

TERRIBERRY, CARROLL & YANCEY, L.L.P.

_____
DAVID B. LAWTON (# 8149)
ROBERT P. BLACKBURN (#24968)
3100 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3100
Telephone:  (504) 523-6451
Attorneys for Leigh Hoegh & Co. Shipping A/S

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been duly served upon all counsel of record by hand delivery, telefax or by depositing same in the U.S. mail, properly addressed, postage prepaid, this 2l day of May, 2002.

_____
DAVID B. LAWTON
ROBERT P. BLACKBURN

N \New Files Folder\323\32340\P\MOTION IN LIMINE.wpd

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELLIS McCLELLAN** | **CIVIL ACTION** |
| | **NO. 00-0342** |
| **VERSUS** | **SECTION "C"** |
| | **JUDGE GINGER BERRIGAN** |
| **HOEGH LINES** | **DIVISION (4)** |
| | **MAGISTRATE JUDGE** |
| | **KAREN WELLS ROBY** |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF**
**GEORGE DUFFY AND CORNELIUS E. GORMAN**

MAY IT PLEASE THE COURT:

This case involves plaintiff's claim for damages pursuant to the Longshore & Harbor

Workers' Compensation Act after plaintiff allegedly slipped while descending a crane's ladder

aboard M/V HOEGH DUKE. In an attempt to establish vessel liability and recoverable damages

pursuant to that Act, plaintiff intends to call several expert witnesses, including a marine safety

1

expert, George Duffy, and a vocational rehabilitation expert, Cornelius Gorman. Defendant moves to have the court exclude their opinion testimony, as the intended "expert testimony" does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence.

As the Court knows, the United States Supreme Court in *Daubert v. Merrell Dow Pharmeceuticals, Inc.* established a two part test for trial courts to utilize in determining the admissibility of expert testimony pursuant to Federal Rules of Evidence Rule 702.[1] First, the Court must "determine whether the expert's testimony reflects scientific knowledge, is derived from the scientific method, and is supported by 'appropriate validation' – *i.e.*, good grounds based on what is known."[2] Second, the Court should ensure the testimony assists the jury in determining a factual issue not "generally derived from common sense deductions, or [not] requiring specialized or technical expertise or experience."[3] Even in cases where an expert has demonstrated a sufficient

---

[1] *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the knowledge or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify either in the form of an opinion or otherwise, if (1) the testimony is based upon scientific facts or data, (2) the testimony is the product of reliable principals or methods, and (3) the witness has applied the principals and methods reliably to the facts of this case."

[2] Jacobs v. Northern King Shipping Co., Ltd., 1998 WL 28234, p. 1 (E.D.La.1998), *citing* Daubert at 590.

[3] F.R.E. Rule 702. See also Eugene v. Mormac Marine Transport, Inc., 1994 WL 25527, p.1 (E.D.La.1994).

2

scientific, or technical basis for his opinions and the testimony is useful to the jury, the expert should not express opinions as to the ultimate issues of negligence and causation.[4]

## George Duffy

Plaintiff intends to call George Duffy as a marine safety expert. His purported testimony, based on his report[5] , will not assist the trier of fact because the conclusions made in his report are issues a jury can weigh without any specialized technical knowledge or experience, or are purported conclusions of law.

The first page of Mr. Duffy's report simply recounts what facts he learned from the documents. It does not purport to be, nor is it, an expert opinion. It is only relevant if there is competent opinion testimony based upon it.

The second page of Mr. Duffy's report contains his "opinions." For ease of discussion, the sections of the report will be quoted herein and then will be followed by defendant's objections.

> *"The area is not open and obvious and not in the normal work area*
>
> *in which the stevedores operate.... The only stevedore personnel that*
>
> *enter this area are the crane operator. "*

---

[4]Johnson v. Gulf Tran, Inc & Newfield Exploration Co., 2000 WL 1716270 (E.D.La.2000).

[5]George Duffy's report is attached as Exhibit "A".

3

In the above paragraph, Mr. Duffy begins by trying to physically characterize an area as not open and obvious. The jury is free to look at pictures or hear descriptions of the ladder to the crane. There is nothing about Mr. Duffy's expertise that makes him more qualified than the jury to conclude whether the area is "open and obvious." This is not the type of "scientific, technical or specialized knowledge" allowed by Rule 702. Rather, it is simply someone applying conclusory buzzwords to try to improperly influence a jury's opinion about the physical setting involved.

Mr. Duffy's next statement that "the only stevedore personnel that enter this area are the crane operator" is testimony about the practice of the stevedoring company involved. Such evidence, if it exists, must come from the stevedore personnel, not an absent commentator who has demonstrated no competent basis for the conclusion.

> *"It is the **responsibility of the vessel crew** to properly turn over the vessel and its's cranes to the stevedore. The[y] must insure the [sic] all vessel equipment is in good working order and that it is continually checked during the stevedore operations to ensure the safety of the longshore personnel."* (Emphasis added.)

This statement of Mr. Duffy is a blatant attempt to instruct the jury on the law. The "responsibility of the vessel crew" is a legal issue. The correct legal standard is for the Court to give to the jury -- not for Mr. Duffy. Even worse, Mr. Duffy's characterization of the legal standard is not even a correct statement of the law. This statement would only cause jury confusion, because

4

the vessel owes no continuing duty to the longshoremen to inspect areas under the control of the stevedore and the vessel is not the party primarily responsible for the safety of longshoremen.[6]

> *Prior to arrival at the berth it is normal procedure for the vessel crew to start the vessel cranes and check to ensure they are in good operating condition. They **should** also check for any hydraulic leaks and any oil that may have leaked in all areas of the cranes and vessel deck area. The vessel crew **should** perform routine maintenance check to ensure that during the use of this equipment that it continues to perform in good working order. They **should** routinely monitor for any oil leaks that may occur. If a leak or spill is discover [sic], **it is the vessel crews responsibility** to immediately clean up the spill to ensure that all the oil is removed and that no safety hazzard remains.*

Again, in the above paragraph, Mr. Duffy intends to instruct the jury on the duty of the shipowner. The primary duty to act in an area turned over to the stevedore is defined by the law. The responsibility to instruct the jury upon that duty is for the Court. Mr. Duffy is explicitly intruding upon the province of the Court. Furthermore, to the extent the issue is one of mixed fact and law, it properly is up to the jury to make that determination – not Mr. Duffy.

---

[6]Randolph v. Laeisz, 896 F.2d 964, 969 (5th Cir. 1990).

> *Mr. McClellan took photos of the area he slipped on due to the*
> *presence of hydraulic oil which is a clear substance and very difficult*
> *to see in an enclosed area.*

The cause of Mr. McClellan slipping is an issue for the jury to decide. The conclusion by Mr. Duffy that McClellan slipped due to hydraulic oil is not within his area of expertise, nor within his province of as an expert to offer an opinion. As to the visibility of the hydraulic oil in that area, that is a subject matter for witness testimony. Mr. Duffy is not an expert on "visibility."

> *In one of the photos there is shown a bag with some rags in it. This*
> *would indicate to me that the vessel crew was aware of the hydraulic*
> *leaks and had made a ineffective attempt to remove the hazard.*

The contents of the photo, if admitted, are evidence in and of themselves. No comment by Mr. Duffy is necessary or appropriate. As to the subjective and unsupported speculation about the mental state of the crew, that is for argument by the jury. It is not an area of expert testimony. **"[T]he word "knowledge" connotes more than subjective belief or unsupported speculation."** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)

> *It is my professional opinion based on the documents that I have*
> *reviewed that this accident was a direct result of the vessel's crews*

6

> *failure to remove this oil hazard which resulted in the accident which*
>
> *caused injuries to Mr. McClellan.*

Mr. Duffy's final "professional opinion" is nothing more than a combination of his speculation about the physical cause of the accident and his prohibited and incorrect postulation of the applicable law.

Mr. Duffy's opinion is simply an argument under the guise of an expert report. It would be misleading to the jury. It contains speculative conclusions made by Duffy. Defendant submits it does not qualify as proper expert testimony under Rule 702, and therefore, should be excluded at trial.

### Cornelius E. Gorman

Cornelius Gorman, plaintiff's vocational rehabilitation "expert," has prepared a report that is objectionable on two grounds.[7] First, Gorman offers a medical opinion, which is outside of his area of expertise. He is not a medical doctor. On Page 6 of his report, Gorman states as one of his "vocational diagnoses" that plaintiff has had "full and final occupational removal *secondary to injury.*" Gorman seeks to offer an opinion as to the *cause* of plaintiff's perceived condition, which is something he is simply not qualified to do. This is nothing more than a specious attempt to link plaintiff's purported total disability to an orthopaedic injury, notwithstanding the fact plaintiff is suffering from unrelated but disabling vision problems.

---

[7] Report of Cornelius Gorman, "Exhibit B".

7

Second, Dr. Gorman's report largely consists of background information obtained from lay persons and medical professionals. While these portions are obviously hearsay, Dr. Gorman presents this information solely to cajole sympathy from the trier of fact - just as an advocate would. The jury simply does not need Dr. Gorman's technical expertise to understand plaintiff's background or his feelings. Thus, statements plaintiff allegedly made during Dr. Gorman's interview with him, or Dr. Gorman's psychological impressions of plaintiff, such as: plaintiff "would prefer employment as held in the past and was available to him absent injury, plaintiff "has been disappointed by his loss of work. . . his unhappiness is presented in an even-handed way," and plaintiff " gave no indication of avoiding work" should not go before a jury.[8] The prejudice to the jury of allowing this testimony, which is primarily advocacy as compare to expert opinion, outweighs an possible minimal probative value of the evidence.

Other courts have excluded Gorman's testimony. In <u>Eugene v. Mormac Marine Transport, Inc.</u> the court wrote: "because of the medical testimony that shall be offered in this case, the Court finds that Dr. Gorman's testimony would not assist the jury in reaching a determination whether plaintiff could return to work."[9] Although the plaintiff provided the defendant Dr. Gorman's report after the deadline for doing so had passed in <u>Rutland v. Sundowner Offshore Service, Inc.</u>, the court

---

[8]Id.

[9]<u>Eugene v. Mormac Marine Transport, Inc.</u>, 1994 WL 25527, p.1 (E.D.La.1994).

nevertheless found Dr. Gorman's "conclusions were medical opinions for which he holds no qualification to express and his methodology to be lacking."[10]

In sum, Dr. Gorman's testimony should be excluded because it consists only of background information easily understood by a jury and which is duplicative and otherwise primarily argumentative in nature. Seconly, he purportedly will offer opinion testimony as to medical causation, which he is not qualified to do.

For the above reasons, defendant requests the Court to exclude the testimony of George Duffy and Cornelius Gorman.

Respectfully submitted:

TERRIBERRY, CARROLL & YANCEY, L.L.P.

DAVID B. LAWTON, T.A. (# 8149)
ROBERT P. BLACKBURN (#24968)
3100 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3100
Telephone:  (504) 523-6451
Attorneys for Leigh Hoegh & Co. Shipping A/S

---

[10]1992 WL 161155, p.3 (E.D.La.1992).

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been duly served upon all counsel of record by hand delivery, telefax or by depositing same in the U.S. mail, properly addressed, postage prepaid, this ‎21 day of May, 2002.

_____

DAVID B. LAWTON

ROBERT P. BLACKBURN

N \New Files Folder\323\32340\P\MEMO IN SUPPORT OF MOTION IN LIMINE.wpd

1

George E. Duffy
Marine Consultant
123  Villere  Drive
Destrehan ,La.  70047
985-764-8591 (H)
504-469-0731 (O)

April 25, 2002
Discon Law Firm
Attn: Mr. Thomas M .Discon
424 North Causeway Blvd
Suite A
Mandeville ,Louisiana 70448

RE:  Ellis McClellan

Versus
Hoegh  Lines
USDC No. 00-0342 "C" (4)

Dear Mr. Discon,

    I have received and reviewed the following listed material that you have provided.

        1-  Deposition transcript of  Mr. Ellis    McClellan ;

        2-  Copy  of  TTO  Accident Report ;

        3-  Photographs :

        4-  Vessel File;

        5-  Defendant's Answers to Discovery

    After review of the above listed documents and photographs I have the following comments.

    The M/V Hoegh  Duke was berth at the Nashville Ave Wharf Berth "A" in Port New Orleans on February 2,1999.Mr.McClellan was a longshoreman working as a crane operator in Mr.E.Frank's' long shore gang. This gang reported at 1000 on February2nd.Mr.McClellan started operating the crane at 1300 hours and continued to operate the crane until 1800 hours at which time he was relieved by another crane operator.

    According to the TTO Accident Report Mr.McClellan , as he  was climbing down the ladder from the crane cab inside the crane pedestal .He slipped on hydraulic oil that was on one of the platform area's inside the crane pedestal. This resulted in injuries to his back. He reported his fall to a vessel officer and to the TTO ship superintendent.



EXHIBIT

A

2

This area is not open and obvious and not in the normal work area in which the stevedores operate (vessel deck   area , vessel cargo holds , gangway area) .The only stevedore personnel that enter this area are the crane operator. It is the responsibility of the vessel crew to properly turn over the vessel and  it's cranes to the stevedore. The must ensure the all vessel equipment is in good working order and that it is continually checked during the stevedore operations to ensure the safety of the long shore personnel.

Prior to arrival at the berth it is normal procedure for the vessel crew to start the vessel cranes and check to ensure they are in good operating condition. They should also check for any hydraulic leaks and any oil that may have leaked in all area's of the cranes and vessel deck area. The vessel crew should perform routine maintenance check to ensure that during the use of this equipment that it continues to perform in good working order. They should routinely  monitor for any oil leaks that may occur .If a leak or spill is discover it is the  vessel crews responsibility to immediately clean up the spill to ensure that all the oil is removed and that no safety hazard remains.

Mr.McClellan, took photos of the area he slipped on due to the presence of hydraulic oil which is a clear substance and very difficult to see in an enclosed area. In one of the photo's there is shown a bag with some rags in it a This would indicate to me that the vessel crew was aware of the hydraulic leaks and had made a ineffective attempt to remove the hazard.

It is my professional opinion based on the documents that I have reviewed that this accident was a direct result of the vessel's crews failure to remove this oil hazard which resulted in the accident which caused injuries to Mr.McClellan.

I reserve the right to amend or modify this report should additional information become available.

Respectfully submitted,

George E.Duffy
Marine  Consultant

# GORMAN & GORMAN, INC.

---

704 MAIN STREET • MADISONVILLE, LOUISIANA  70447
Office (985) 845-4322 • Fax (985) 845-8722
Toll Free 888-893-3940
CORNELIUS E. GORMAN, PH.D.   REBECCA K. GORMAN, BCSW

April 23, 2002

Thomas M. Discon, Esq.                    <u>VIA FACSIMILE ONLY</u>
Discon Law Firm                               (Fax:  674-9749)
424 N. Causeway Boulevard
Suite A
Mandeville, LA   70471

RE:   Ellis McClellan
        SSN:  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

REHAB. CONSULT.:      PRIVATE AND CONFIDENTIAL - NOT FOR
                                RELEASE TO PATIENT OR FAMILY

Dear Mr. Discon:

Ellis McClellan was seen on April 15, 2002, for the purposes of vocational
rehabilitation evaluation, recommendations and report.


<u>REFERRAL INFORMATION</u>

As Mr. McClellan got off the crane he was operating, he slipped in oil and fell,
striking his head, back and legs.  He was initially seen at the Marine Medical Unit
and low back sprain was diagnosed.  On February 10, 1999, he was seen by Dr. John
Watermeier.  He noted pain in the low back, groin, left lower extremity and neck,
headaches, dizziness, blurred vision, and bladder and sexual dysfunction.  He was
referred for urological evaluation.  Medication and physical therapy were prescribed.

He was next seen by Dr. Robert Steiner who noted multilevel disc degeneration,
spondylolysthesis, and possible lumbar strain.  Urological examination was performed
by Dr. Levine in mid 1999.  He prescribed medication and discharged Mr. McClellan
several months later.  Treatment continued with Dr. Watermeier every three months.

EXHIBIT

B

Thomas M. Discon, Esq.
April 23, 2002
Page 2

Because of persistent back pain, a trigger point injection was provided in October 1999. According to the patient, lumbar surgery has been discussed. In addition to his orthopedic treatment, he has been followed by several ophthalmologists for vision problems.

On April 14, 1999, Dr. Ellen Schneider reported that he is legally blind in both eyes and requested further testing. Dr. Robert Balkan examined him, in September 1999, and noted glaucomatous cupping in the left eye and central optic neuropathy in the right eye. On August 3, 2000, Dr. Joel Sacks examined Mr. McClellan. He reported a centrocecal scotoma in the right eye probably due to an old juxtapapillary choroiditis. In February 2001, Dr. Jonathan Calkwood saw him and agreed that his vision loss in the right eye was due to optic nerve damage, probably due to poor blood flow which could be secondary to an inflammatory problem or a spontaneous non-arteritic anterior ischemic optic neuropathy. Mr. McClellan has also been treated by Dr. Mahmoud Daftary for prostate cancer which is now in remission.

## INTAKE DATA

Ellis McClellan's home of record is 1373 Westlawn Drive, Slidell, Louisiana 70458, (985/646-2655). He is married for the second time. He has two children and three stepchildren. None of the children live at home. The patient was born December 10, 1936, and is now 65 years of age with height 6'1" and weight 200 pounds.

History of Injury

Mr. McClellan was injured on the job on February 2, 1999.

Surgery

He has not had surgery since the accident but lumbar surgery has been discussed. Because of his age and health situation, he has opted to postpone it as long as possible.

Thomas M. Discon, Esq.
April 23, 2002
Page 3


Physicians

Dr. Watermeier sees him every two to three months.

Present Medication/Therapy

Tylenol #3 is prescribed by Dr. Watermeier. He also takes a cholesterol lowering medication.

Prior Medical History

He reported no significant past medical problems.


## EDUCATION/TRAINING

| EDUCATION | |
|---|---|
| Elementary: Tylertown, MS | |
| Secondary: Hope Vocational High School, MS (graduated in 1956) | |
| College: | N/A |
| Technical: | N/A |
| Licenses: | N/A |
| Military: | N/A |


## WORK EXPERIENCE

While Mr. McClellan was a teenager, he worked as a farm laborer. After high school, he worked in building construction for several years. He worked in a grocery store as a clerk and bagger for one year and then as a produce truck delivery driver for several years. His next job was with Winn-Dixie as an order picker in a warehouse for three years. He became a longshoreman, in 1966, loading and unloading ships. He was

Thomas M. Discon, Esq.
April 23, 2002
Page 4


classified as a lift driver and a general longshoreman. He remained in the Union and became a crane operator in the early 1980's. He remained a crane operator until the accident in 1999, earning up to $24 per hour ($36 per hour overtime). He has not been able to work since the accident.

According to IRS records, he earned $79,034 in 1997 and $71,699 in 1998.


## PHYSICAL FUNCTIONING

Mr. McClellan right hand dominant. He states his disability correctly as orthopedic in nature.

### Present Diagnosis/Prognosis - From Records

* L5-S1 spondylolysthesis.
* Legally blind, both eyes.

### Symptoms - Subjective

1. Electric shock type pain in low back.
2. Left leg pain, numbness and weakness.
3. Stiffness of back and left leg.
4. Vision problems, glaucoma on left and undetermined problem on right.
5. Headaches.
6. Occasional ringing in left ear.
7. Sleep disruption with back pain.
8. Weather change increases pain in back and legs.
9. Left shoulder pain.

### Restrictions or Daily Limitations

He was advised to avoid heavy lifting, twisting, bending, and prolonged sitting and standing. He is very cautious when driving due to vision problems and numbness of the left leg. According to vocational testing by Dr. Larry Stokes in May 2001, Mr. McClellan has a Total Standard Score of 83 on the SIT-R. Grade equivalent scores on the Woodcock Johnson III were: Letter-Word Identification-8.0; Passage Comprehension-5.1; Math Fluency-4.7; and Reading Fluency-3.2.

Thomas M. Discon, Esq.
April 23, 2002
Page 5


## Other

Mr. McClellan previously enjoyed maintaining his home and church. He receives
$2,000 per month from his Union and $1,168 per month from Social Security. His
wife does not work outside the home. She had an aneurysm last year and had brain
surgery.


## ACADEMIC TESTING

The patient has been totally and permanently removed from all employment.
Assessment of academic talent would provide no benefit and the cost of that effort is
not justified. Mr. McClellan has graduated from high school and presents as
acceptably literate given age, education and occupational experience.


## SOCIAL WORK/COUNSELING SERVICES

The patient has been disappointed by his loss of work and cannot return to gainful
activity. His unhappiness was presented in an even-handed way. Referral was not
recommended given this patient's circumstances.

## Motivation

Mr. McClellan gave no indication of avoiding work. His attitude and lifelong work
habits were excellent, per history.


## WORK CAPACITIES

## Work Capacity - Prior

The patient last worked as a crane operator at $24 per hour and $36 per hour
overtime. He cannot return to that occupation. He reported that he was eligible, but
for his injury, to have continued despite his age.

Thomas M. Discon, Esq.
April 23, 2002
Page 6

The patient's job history, according to U.S. Department of Labor data, is as follows:

| OCCUPATION | DOT NUMBER | TITLE |
|------------|------------|-------|
| #1 | 911.663-014 | Stevedore I |
| #2 | 921.663-010 | Overhead Crane Operator |
| #3 | 421.687-010 | Farmworker, General II |
| #4 | 906.683-022 | Truck Driver, Light |
| #5 | 922.687-058 | Laborer, Stores |

Work Capacity · Present/Future

No future employment is anticipated as of this writing.

Resource Data

U.S. Department of Labor materials were utilized along with local wage and salary
information.  The reported wages were in keeping with that found.

OCCUPATIONAL INTERESTS

Mr. McClellan would prefer employment as held in the past and as was available to
him absent injury.

VOCATIONAL DIAGNOSES

I.     Full and final occupational removal secondary to injury (1999).
II.    Normal vocational intellect.
III.   Adequate adult literacy.
IV.    Excellent work history.
V.     Excellent attitude.
VI.    Long term health related planning and budgeting recommended.

Thomas M. Discon, Esq.
April 23, 2002
Page 7


## SUMMARY

Mr. McClellan reported as scheduled. He made an excellent effort toward his evaluation. He was informative and explained his employment problems relative to having been hurt.

It is not possible to return this man to the former or alternative employment. In the event that additional information is needed, please advise.

This report was completed in accord with LSA R.S. 37:2701 et seq., LSA R.S. 37:2351 et seq., LSA R.S. 37:1101 et seq. and LSA R.S. 37:2706 et seq.

Thanking you for your attention to the above and with best wishes. I am

Sincerely,

Cornelius E. Gorman, Ph.D.
Rehabilitation Consultant
Psychiatric Social Worker

CEG/bb

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**ELLIS McCLELLAN**

**VERSUS**

**HOEGH LINES**

**CIVIL ACTION**

**NO. 00-0342**

**SECTION "C"**
**JUDGE GINGER BERRIGAN**

**DIVISION (4)**
**MAGISTRATE JUDGE**
**KAREN WELLS ROBY**

## NOTICE OF HEARING

PLEASE TAKE NOTICE that undersigned counsel for defendant Leigh Hoegh & Co. Shipping A/S, will bring on for hearing the foregoing Motion to Exclude Expert Testimony at 9:30 a.m. on Wednesday, June 5, 2002, before the Honorable Helen G. Berrigan at the United States District Court for the Eastern District of Louisiana, located at 500 Camp Street, New Orleans, Louisiana.

1

Respectfully submitted:

TERRIBERRY, CARROLL & YANCEY, L.L.P.

_____

DAVID B. LAWTON (# 8149)
ROBERT P. BLACKBURN (#24968)
3100 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3100
Telephone: (504) 523-6451
Attorneys for Leigh Hoegh & Co. Shipping A/S

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been duly served upon all counsel of record by hand delivery, telefax or by depositing same in the U.S. mail, properly addressed, postage prepaid, this 21 day of May, 2002.

_____
DAVID B. LAWTON
ROBERT P. BLACKBURN

N:\New Files Folder\323\32340\P\Notice of Hearing re Motion in Limine.wpd

2