

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JUN 11  PM 4: 30

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ELLIS McCLELLAN** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER: 00-0342** |
| | * | |
| **HOEGH LINES** | * | **SECTION: "C"** |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | **MAGISTRATE: (4)** |

### PRE-TRIAL ORDER

**I.**    A final pre-trial conference is scheduled in this matter for Tuesday, June 11, 2002, at 3:30

p.m., before the Honorable Helen Ginger Berrigan, United States District Judge, Section "C",

at New Orleans, Louisiana.

**II.    APPEARANCE OF COUNSEL:**

      **A.**    THOMAS M. DISCON, T.A.
            JOHN G. DISCON
            GREGORY T. DISCON
            DISCON LAW FIRM
            424 N. Causeway Boulevard
            Mandeville, Louisiana 70448
            Attorney for Ellis McClellan

      **B.**    DAVID B. LAWTON, T.A. (# 8149)
            ROBERT P. BLACKBURN (#24968)
            TERRIBERRY, CARROLL & YANCEY, L.L.P.
            3100 Energy Centre, 1100 Poydras Street
            New Orleans, Louisiana  70163-3100
            Telephone: (504) 523-6451
            Attorneys for Leigh Hoegh & Co. Shipping A/S

DATE OF ENTRY

JUN 12 2002



C.    ALAN G. BRACKETT (14094)
MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC
650 Poydras St., Ste. 2150
New Orleans, LA 70130
Attorney for Intervenor

## III.    DESCRIPTION OF THE PARTIES:

### A.    BY THE COMPLAINANT, ELLIS MCCLELLAN:

Ellis McClellan, a person of the full legal age and a citizen and domiciliary of this district
of Louisiana, has made a claim against Leigh Hoegh & Co. Shipping A/S pursuant to 33 U.S.C.
905(b). Ellis McClellan was a longshoreman employed by Transocean Terminal Operators, Inc.
at the time of incident

### B.    BY THE DEFENDANT:

· Leigh Hoegh & Co. Shipping A/S is a foreign legal entity who, at all pertinent times, was the
owner of the HOEGH DUKE. The vessel is an ocean going cargo vessel on which plaintiff claims
to have been injured.

### C.    BY THE INTERVENOR:

Transocean Terminal Operators, Inc., plaintiff's employer, and its carrier, the American
Longshore Mutual Association, Ltd., intervened in this action to recover benefits paid to or on
behalf of plaintiff pursuant to the Longshore and Harbor Workers' Compensation Act. Those
claims have now been settled between plaintiff and intervenors.

## IV.    JURISDICTION:

This is a maritime claim in which there is complete diversity of citizenship between
the parties. Jurisdiction is not contested.

## V.    MOTIONS PENDING OR CONTEMPLATED:

### A.    BY THE COMPLAINANT, ELLIS MCCLELLAN:

Counsel for complainant at this time does not contemplate filing any pre-trial motions.

### B.    BY THE DEFENDANT:

Presently before the Court is defendant's motion to exclude the testimony of George Duffy and Cornelius Gorman.

### C.    BY THE INTERVENOR:

Plaintiff and Intervenors will be filing a Motion for Partial Dismissal as to the Complaint of Intervention filed by Intervenors. The parties are in the process of finalizing settlement documentation relative to those claims, which will be submitted to the United States Department of Labor for approval.

## VI.    A BRIEF SUMMARY OF THE MATERIAL FACTS CLAIMED BY:

### A.    BY THE COMPLAINANT, ELLIS MCCLELLAN:

On February 2, 1999, Ellis McClellan was working as a stevedore and employed by Transocean Terminal Operators. McClellan was hired to operate one of the cranes of the M/V Hoegh Duke. The M/V Hoegh Duke was berthed at the Nashville Avenue Wharf in New Orleans, Louisiana. On said date McClellan began work at approximately 1300 hours and continued to operate the crane until 1800 hours. McClellan operated this crane for approximately five hours and was exiting the cab of the crane when he slipped and fell ~~on the deck at the base of the access ladder~~. McClellan slipped in hydraulic fluid which had been allowed to accumulate ~~on the deck at the base of the ladder~~. McClellan's shift was the initial shift for the longshoremen

3

on this vessel on this visit to the port by this vessel. The ship had just been turned over to the longshoremen by the vessel's crew.

This area where the accident took place is not open and obvious and not in the normal work area in which the stevedores operate (vessel deck area, vessel cargo holds, gangway area). The only stevedore personnel that enter this area are the crane operator. It is the responsibility of the vessel crew to properly turn over the vessel and it's cranes to the stevedore. They must ensure that all vessel equipment is in good working order and that it is continually checked during the stevedore operations to ensure the safety of the longshore personnel.

Prior to arrival at the berth its is normal procedure for the vessel crew to start the vessel cranes and check to ensure they are in good operating condition. They should also check for any hydraulic leaks and any oil that may have leaked in all area's of the cranes and vessel deck area. The vessel crew should perform routine maintenance checks to ensure that during the use of this equipment that it continues to perform in good working order, especially after hydraulic oil had been found leaking in the crane pedestal. They should monitor for any oil leaks that may occur. The crane pedestals are areas under the ship's control not the longshoreman's control. For example, the ship maintains the ships equipment, not the longshoremen. Also in a hatch being offloaded by longshoremen, the hatch area is under the control of the longshoremen. In this situation, to expect longshoremen to monitor the condition of the ship's cranes would be ridiculous. If a leak or spill is discovered it is the vessel crews responsibility to immediately clean up the spill to ensure that all the oil is removed and that no safety hazard remains.

4

Photographs of the area were taken and in one of the photographs there is shown a bag with some rags in it which indicates that the vessel crew was aware of the hydraulic leaks and had made an ineffective attempt to remove the hazard.

Defendant was negligent in failing to properly maintain, clean, and/or service the crane/vessel in question. Defendant failed to warn McClellan of the dangerous condition of the crane/vessel. Defendant should have warned the longshore crew and McClellan that hydraulic oil had been found to be leaking in this area prior to McClellan entering the crane for his shift. Defendant's negligence in the above conditions rendered an inherently dangerous ship condition to McClellan that led directly to McClellan's injuries.

At the time of the accident, McClellan was 62 years of age. As a result of the accident herein McClellan had initial medical treatment at the Marine Medical Unit on February 2, 1999 and a diagnosis of a lower back strain with arthritic changes was made. When seen again, on February 8th, McClellan also gave a history of hitting his head when he fell. Dr. Rivero performed x-rays of the lumbosacral spine and diagnosed narrowing of the disc space at L5-S1 with spondylosis and arthritic changes. McClellan was next examined by Dr. John J. Watermeier and the initial diagnosis was lumbosacral spondylolisthesis. A history of headaches, neck, back, and shoulder pain and sexual dysfunction was obtained by Dr. Watermeier. Dr. Watermeier found mild tenderness of the lumbar spine and evidence of muscle spasm. McClellan was next seen by Dr. Robert Steiner who noted multilevel disc degeneration, spondylolisthesis, and possible lumbar strain. Urological examination was performed by Dr. Levine in mid 1999. He prescribed medication and discharged Mr. McClellan several months later. Treatment continued with Dr.

Watermeier and due to persistent back pain, a trigger point injection was provided in October 1999. McClellan continues conservative treatment with Dr. Watermeier.

McClellan is restricted from his previous occupation as a result of this injury. At the time of his injury, McClellan's earnings ranged from $24 per hour regular time and $36 per hour overtime. Utilizing McClellan's wages at the time of accident places plaintiff at loss wages and benefits of over $544,215 after the reduction of taxes.

Unrelated to this accident McClellan has been treated by Dr. Mahmoud Daftary for prostate cancer which is now in remission.

**B.    BY THE DEFENDANT:**

Plaintiff, a sixty-two year old crane operator employed by Transocean Terminal Operators, claims to have slipped on hydraulic fluid as he descended a ladder aboard HOEGH DUKE on February 2, 1999. There were no witnesses to this incident and only plaintiff claims to have seen a hydraulic leak. Specifically, plaintiff claims to have fallen as he descended a ladder inside of crane pedestal No. 4 nearly eight hours after the vessel had been turned over to the stevedore.

Plaintiff has testified he was not aware of the presence of hydraulic fluid prior to the incident. Plaintiff was the lone longshoreman who operated crane No. 4 prior to the incident. Thus, he was the only person to have climbed the segment of the ladder on which he claims to have slipped.

The facts surrounding the incident indicate the vessel did not breach the turnover duty owed plaintiff. The hydraulic fluid on the ladder, or a leak, did not exist at the time the stevedore took control of crane No. 4, some eight hours prior to the alleged incident. Plaintiff has admitted that he did not observe anything out of the ordinary when he first climbed the ladder when his stint began. The stevedore's time sheets, which are prepared for billing purposes, reflect work was not stopped

6

due to any problems with the crane prior to, or subsequent to the incident plaintiff claims occurred at approximately 1800 hours. Plaintiff himself has stated he did not encounter any problems with the operation of the crane on February 2, 1999.

The vessel cannot be said to have breached its turnover duty unless the hazard existed at the time the stevedore began work *and* the vessel knew or should have known of the condition. There is no evidence in this case that the vessel's crew knew or should have known of any hydraulic leak or fluid spill. No other witnesses, including two TTO ship superintendents, were notified of the alleged hazard prior to the incident and the superintendents did not notify the vessel of any hazard, as normal procedure would have required, or halt operations until the hazard was remedied. The ship superintendent to whom plaintiff reported the incident did not even notify the vessel of "the leak" *after* the incident. There is no evidence the vessel had "actual knowledge" of the leak prior to the incident.

Additionally, to show a duty to intervene, plaintiff must prove that the shipowner had actual knowledge of a defect that posed an unreasonable risk of harm *and* that it could not rely on the stevedore to protect its own employees. Even assuming the vessel's command had knowledge of the alleged hazard, which is denied, there is no evidence to establish that the vessel could no longer rely on the stevedore to protect its own employees. The duty to intervene is not triggered by the mere presence of hydraulic fluid on a seagoing vessel.

Plaintiff claims that the incident aboard the vessel caused injury to his lower back, sexual dysfunction, and hearing loss. To date, plaintiff has not undergone any surgical procedures, nor have any been recommended. Additionally, plaintiff, now age 65, suggests that the incident has prevented him from returning to work as a crane operator, or for that matter, any other occupation.

7

Plaintiff suffers from significant, pre-existing, and unrelated, vision problems. Plaintiff has in fact been said to be legally blind by multiple ophthalmologists as early as two months post-incident. The suggestion made by plaintiff that he has been prevented from returning to work as a crane operator due to the incident is meritless. The truth of the matter is plaintiff could not conceivably have worked as a crane operator (an occupation requiring strong visual acuity and depth perception) beyond the Spring of 1999. Plaintiff's claimed entitlement to future lost wages, and a significant amount of lost past wages, is not supported by the medical facts of this case, even should the vessel be found liable.

Even putting aside the fact plaintiff has been legally blind since at least the Spring of 1999, plaintiff has also been diagnosed with prostate cancer, which cannot be linked to the incident of February 2, 1999. This unfortunate condition, not the alleged fall aboard HOEGH DUKE, is the cause of any sexual dysfunction plaintiff has claimed.

Plaintiff was also involved in an automobile accident following the alleged incident. He sought treatment for head and neck injuries on July 9, 1999 and was diagnosed as having in his cervical spine degenerative disk disease, a condition also found in plaintiff's lumbar spine.

On February 2, 1999, plaintiff first sought medical treatment at the Marine Medical Unit in New Orleans. Plaintiff claimed he fell on his "tailbone" and also complained of pain at the base of the sacrum.

Despite the fact that plaintiff had only been diagnosed with a strain the day after the accident he elected to take full retirement. This fact clearly demonstrates plaintiff had no intention of working to age 65, or beyond, as plaintiff now claims.

8

An examination by Dr. Steiner on February 11, 1999 revealed no lumbar spasms, no motor weaknesses and negative straight leg raising tests. X-ray examination revealed multi-level degenerative lumbar disc disease and spondylolisthesis. It was Dr. Steiner's opinion that while plaintiff might have sustained a lumbar strain as a result of his fall, plaintiff did not have any clinical findings of lumbar nerve root impingement, nerve root irritation, or neurologic deficit. Dr. Steiner recommended a short course of physical therapy and predicted maximum medical improvement would be anywhere from 3-8 weeks post-injury.

The day before Dr. Steiner's examination, plaintiff visited Dr. John Watermeier, another orthopaedist. At that examination, plaintiff complained of moderate to severe low back symptoms, numbness and weakness of the left lower extremity, and that "sitting, lying down and lifting" aggravated his low back pain. Plaintiff also complained to Dr. Watermeier of moderate pain in his neck, frequent headaches, dizziness and blurred vision.

An examination found full range of motion of the low back, some mild tenderness, and normal straight leg raising bilaterally. The cervical exam revealed full range of motion and no spasm. The clinic impression was low back and groin pain by history. Dr. Watermeier recommended a neurological evaluation for sexual dysfunction and physical therapy for the low back. Dr. Watermeier, like Dr. Steiner, apparently found no objective evidence of injury based on his reports.

Plaintiff began physical therapy at Slidell Memorial Hospital outpatient rehabilitation services. Plaintiff told the physical therapist he was convinced physical therapy would not help. Not surprisingly, plaintiff did not have any success at the rehabilitation program. He reported no change in his low back or buttock pain after 8 sessions.

9

On March 23, 1999, Dr. Watermeier examined plaintiff again. Plaintiff continued to complain of headaches, neck, shoulder pain, and blurry vision of the left eye. The impression was lumbar spondylolisthesis. As to other problems, Dr. Watermeier recommended plaintiff undergo urological and ophthalmological examinations.

On February 23, 2000, Dr. Steiner stated that the patient's limitation to light duty was based on subjective complaints and that he could not find any objective evidence of injury. All changes noted on the diagnostic studies were pre-existing conditions.

Periodic physical examinations by Dr. Watermeier continued. On October 4, 2000, Dr. Watermeier found increased mobility of the lumbar spine. Essentially the findings were the same as they had been before. The assessment was lumbar disc syndrome. Plaintiff continues to see Dr. Watermeier for orthopaedic treatment every three months. Dr. Watermeier's assessment of plaintiff's condition has not changed in any meaningful way since Dr. Steiner last examined plaintiff in February, 2000. There have been no recommendations that plaintiff undergo back surgery.

With regard to plaintiff's urological complaints, there is no evidence to suggest that they are related to the alleged incident aboard HOEGH DUKE. As early as 1995, plaintiff presented with remarkably similar complaints (pain between his rectum and penis and other urological problems) and was treated by Dr. Esteban Romano and later Dr. Mahmoud Daftary. Plaintiff underwent prostate surgery in October, 1999 and radiation treatments in the spring of 2000 for prostate cancer. Plaintiff has apparently also been treated by Dr. Levine, another urologist.

10

In sum, defendant contends plaintiff's present subjective complaints are caused by a condition pre-existing February 2, 1999. There is simply no objective evidence to suggest that plaintiff's occasional back complaints resulted from the alleged incident, or that this injury has caused any disability. Moreover, plaintiff could not possibly have continued working to the extent he now claims, but for the incident, due to his significant, unrelated, and pre-existing vision problems. Finally, the sexual dysfunction and continued pain between his penis and rectum also pre-existed February 2, 1999 and was not caused by any slip and fall aboard HOEGH DUKE.

## VII.   COMPREHENSIVE WRITTEN STATEMENT OF ALL UNCONTESTED MATERIAL FACTS:

1.   The M/V Hoegh Duke, at all pertinent times was owned and/or operated by  Leigh Hoegh & Co. Shipping A/S.

2.   Transocean Terminal Operators, at all pertinent times herein was the employer of Ellis McClellan in his capacity as Longshoreman.

3.   Ellis McClellan, at all pertinent times was working in the course and scope of his employment with Transocean Terminal Operators.

4.   · Ellis McClellan was involved in an incident on the M/V Hoegh Duke on February 2, 1999 at the Nashville Avenue Wharf, New Orleans, Louisiana and was acting in the course and scope of his employment at the time of his employment.

5.   Plaintiff was employed as a crane operator aboard the vessel.

6.   There were no eyewitnesses to plaintiff's alleged slip and fall.

## VIII.   A SINGLE LISTING OF THE CONTESTED ISSUES OF FACT:

1.   Negligence of defendant as set forth in Paragraph VI of the Pre-Trial Order and any and all other negligence that may be shown at time of trial;

2.   The knowledge of the vessel's officers and/or crew.

3.    Damages of plaintiff;

4.    Disability of plaintiff;

5.    The extent of McClellan's alleged injuries;

6.    The extent of McClellan's alleged general and special damages;

7.    Whether McClellan has sustained economic loss as a result of the alleged incident and injuries at issue;

8.    Whether defendant's negligence caused the alleged incident at suit.

9.    Amount of McClellan's prior lost wages, if any.

10.   Amount of McClellan's future economic loss, if any.

11.   · McClellan's physical abilities, limitations and restrictions.

12.   McClellan's wage earning capacity.

13.   Any issues of fact implicit in the contested issues of law.

14.   The manner of occurrence of the alleged accident.

15.   Whether plaintiff's economic loss set forth by his economist is a proper measure of plaintiff's special wage and fringe benefits lost.

16.   The existence, nature and extent of plaintiff's injuries and disabilities, if any, resulting from his alleged accident.

17.   Whether an incident involving plaintiff occurred.

18.   Whether the stevedore was solely at fault for plaintiff's incident.

19.   Whether plaintiff was negligent.

20.   Whether plaintiff sustained an injury as a result of the incident.

21.   Whether the vessel acted with reasonable care to insure the vessel was in a condition to allow the stevedore to conduct cargo operations with reasonable safety.

22.   Whether the vessel had actual knowledge of the alleged condition causing the injury, if any.

23.    Whether the alleged condition was a latent defect.

24.    Whether the condition encountered was open and obvious.

25.    Whether the condition or hazard encountered by plaintiff, if any, was present at the time the vessel was turned over.

26.    · Whether the vessel had actual knowledge of the condition post-turnover.

27.    Whether the ship's crew exerted control of crane No. 4 at the time of the incident.

28.    Whether the vessel had actual knowledge that it could not rely on the stevedore to remedy the alleged presence of fluid in the crane pedestal.

29.    Whether plaintiff's conduct in descending the ladder was "obviously improvident".

30.    Whether the vessel had actual knowledge of plaintiff's intention to act improvidently.

31.    Whether plaintiff has suffered any past or future wage loss.

32.    Whether plaintiff's physical complaints are causally related to the incident alleged.

33.    Whether plaintiff's unrelated vision deficiencies prevent his returning to work.

34.    Whether plaintiff has failed to mitigate his damages.

35.    · Whether the crane pedestal #4 remained under the ship's control.

36.    Whether Crane No. 4 on HOEGH DUKE was turned over to the stevedore eight hours prior to the incident alleged by plaintiff.

37.    Whether Plaintiff climbed and descended the ladder to crane No. 4 several times prior to the incident.

## IX.    CONTESTED ISSUES OF LAW:

1.    The duties owed by Defendant to Plaintiff;

2.    All issues of law inherent in the issues of fact.

3.    Whether plaintiff can be comparatively negligent.

4.    Recoverable damages, if any.

13

5.   The negligence of the vessel interest.

6.   Whether the vessel breached any of its duties under <u>Scindia</u>?

7.   Whether plaintiff was contributorily negligent, or solely responsible for his injury, if any?

8.   Whether plaintiff's unrelated vision deficiencies that rendered him incapable of being a crane operator prohibit an award of past and future lost wages?

9.   Allowance/disallowance of economic testimony based on false assumptions (e.g. alleged future wage loss).


X.   **THE FOLLOWING IS A LIST AND DESCRIPTION OF EXHIBITS TO BE INTRODUCED AT TRIAL:**

&middot; A.   **BY THE COMPLAINANT, ELLIS MCCLELLAN:**

   1.   Accident Report

   2.   Personnel file of Ellis McClellan

   3.   Plaintiff's tax returns and W-2 forms

   4.   Social Security Administration records of Ellis McClellan

   5.   Any and all certified records of medical or hospital treatment to plaintiff prior to and subsequent to the accident at issue, including, but not limited to the records of Dr. John J. Watermeier; Dr. Cornelius Gorman, Dr. Mahmoud Daftary, Dr. Robert Balkan, Dr. Richard Levine, Dr. Jonathan Calkwood,, Dr. Joel Sacks, Dr. Roland Duffour, Dr. Michael N. Kleamenakis, Slidell Memorial Hospital Outpatient Rehab. Center

   6.   Any and all photographs of the accident site and/or plaintiff

   7.   Logs of the vessel and longshoremen herein/work assignment sheets

   8.   Photographs and/or videotapes of the vessel herein or the sister vessel.

   9.   Certificate of Documentation on the vessel involved herein

   10.   Registration and Ownership Papers on the vessel involved herein

14

11.  Any and all medical expense invoices

12.  Insurance policies or rules for insurance of defendant

13.  Any and all log book records for the vessel involved herein

14.  Any and all work orders, repair and/or maintenance orders

15.  Daily work records/time sheets

16.  Any and all exhibits to any deposition taken in this matter

17.  Drawings and/or specifications of the subject vessels/derricks along with photographs

18.  Medical bills of Ellis McClellan
     *OBJECTION - RELEVANCE AND HEARSAY*

19.  Any and all investigation reports of accident/illness
     *OBJECTION - HEARSAY*

20.  X-rays and/or diagnostic films of Ellis McClellan

21.  Any and all Interrogatories, Requests for Production, Requests for Admissions, Answers to Interrogatories, Responses to Requests for Production, and Responses to Requests for Admissions on file in this matter, along with any documents or exhibits produced in connection with same
     *OBJECTIONS TO DOCUMENTS AND EXHIBITS UNLESS LISTED SEPARATELY*

22.  Any and all vessel inspections
     *OBJECTION - VAGUENESS BECAUSE NO SPECIFIC INSPECTION - HEARSAY- RELEVANCE*

23.  Records of New Orleans Employers-International Longshoreman's Association, AFL-CIO Pension, Welfare, Vacation and Holiday Fund

24.  Records of TTO

25.  Any and all forms on file with the Department of Labor

26.  Records of the Waterfront Employers of New Orleans

27.   The deposition(s) of any witness unavailable for trial and/or outside the subpoena power of this Court

28.   Any and all exhibits listed or sought to be introduced by any other party to this litigation.

29.   Plaintiff reserves the right to add to and/or otherwise revise the foregoing list of exhibits as additional information may become available and/or as additional discovery may disclose and/or require due to the nature of this case.

## B.    BY THE DEFENDANT

1.   Excerpts of deck log entries of M/V HOEGH DUKE;

2.   Diagram of vessel's crane;

3.   Lloyd's Register class certificates relative to ship's gear;

4.   Statement of Luis Mallari;
     ***OBJECTION-HEARSAY***

5.   Statement of plaintiff given following the incident to Messrs. Benfield & Co.;

6.   Stevedore's daily working report;

7.   Stevedore's daily time sheet;

8.   Stevedore's billing invoices;

9.   Any other relevant stevedore document;

10.  Supervisor's investigation report of employee accident/illness;

11.  Records involving plaintiff's intervening automobile incident;

12.  Plaintiff's notice of retirement;
     ***OBJECTION-IRRELEVANT AND COLLATERAL SOURCE***

13.  Records of New Orleans Employers-International Longshoreman's Association, AFL-CIO Pension, Welfare, Vacation and Holiday Funds;

14.    Medical records of Dr. Jonathan Calkwood;
          ***OBJECTION-HEARSAY***

15.    Report of Messrs. Technical Maritime Associates;
          ***OBJECTION-HEARSAY***

16.    Medical records of Dr. Robert Steiner;
          ***OBJECTION-HEARSAY***

17.    Medical records of Dr. Robert Balkan;
          ***OBJECTION-HEARSAY***

18.    Medical record s of Dr. Ellen Schneider;
          ***OBJECTION-HEARSAY***

19.    Medical records of Dr. Michael Kleamenakis;
          ***OBJECTION-HEARSAY***

20.    Medical records of Dr. Mohamed Daftary;
          ***OBJECTION-HEARSAY***

21.    Medical records of Dr. Estaban Romano;
          ***OBJECTION-HEARSAY***

22.    Medical records of Slidell Radiation Center;
          ***OBJECTION-HEARSAY***

23.    Medical records of Dr. Joe Sacks;
          ***OBJECTION-HEARSAY***

24.    Medical records of Northshore Family Medical Center;
          ***OBJECTION-HEARSAY***

25.    Medical records of Slidell Memorial Hospital;
          ***OBJECTION-HEARSAY***

26.    Medical records of Dr. Richard Levine;
          ***OBJECTION-HEARSAY***

27.    Records of Larry Stokes;
          ***OBJECTION-HEARSAY***

28.    Medical records of Northshore Regional Medical Center;
          ***OBJECTION-HEARSAY***

29.      Medical records of Marine Medical Unit;
        ***OBJECTION-HEARSAY***

30.      Any documents evidencing a criminal conviction by any witness.
        ***OBJECTION-HEARSAY***

31.      Any other medical records of plaintiff's past or current health care providers;
        ***OBJECTION-HEARSAY***

32.      Any deposition transcript submitted in lieu of court testimony;

33.      Plaintiff's responses to defendant's discovery;

34.      Excerpts from plaintiff's deposition; and

35.      Pictures of HOEGH DUKE and HOEGH DYKE crane pedestal area.

36.      Diagrams of crane pedestal.

37.      Any exhibit listed by any other party.

**XI.**    The parties herein reserve the right to use, in whole or in part, any deposition testimony for impeachment purposes or purposes allowed by the Federal Rules of Civil Procedure, including depositions for trial purposes should any of the witnesses heretofore deposed be unavailable for trial or beyond the subpoena power of this Honorable Court.

Plaintiff presently anticipates offering the deposition testimony of the following witnesses because they are beyond the subpoena power of the Court:

A.      Chief Officer Kolbjorn I. Meek
       Norway - address unknown

B.      Svein Pedersen
       Oslo, Norway

C.      Any and all depositions listed by defendant.

Defendant presently anticipates offering the deposition testimony of the following witnesses because they are beyond the subpoena power of the Court, or otherwise unavailable:

A.  Chief Officer Kolbjorn I. Meek
    Norway - address unknown

B.  Dr. Robert Steiner
    3525 Prytania Street, Suite 501
    New Orleans, LA 70113

C.  Dr. Robert Balkan
    3434 Prytania St., Suite 250
    New Orleans, La. 70115

D.  Svein Pedersen
    Oslo, Norway

E.  Dr. Urmila Kedia
    1111 Medical Center Blvd., Suite 570
    Marrero, LA 70072

**XII.**  The parties herein may wish to use blackboard, photographs, graphs, schematics, charts, diagrams, drawings, and/or sketches in connection with opening statements and/or closing arguments.  Any such diagrams, drawings, etc., will be designated and submitted to opposing counsel prior to the trial.

**XIII.  LIST OF WITNESSES:**

**A.  BY THE COMPLAINANT, ELLIS MCCLELLAN:**

**I.    WILL CALL**

Mr. Ellis McClellan
1373 Westlawn
Slidell, LA   70458

Facts and circumstances of the accident, injuries, disability, loss wages, medical treatment and all aspects of the case.

19

Mrs. Ellis McClellan
1373 Westlawn
Slidell, LA   70458
(504) 646-2655

Dr. John J. Watermeier
The Louisiana Clinic
3715 Prytania Street, Suite 501A
New Orleans, Louisiana   70115

To testify regarding the medical condition, treatment and recommendations
as to Ellis McClellan.

Dr. Cornelius Gorman
704 Main Street
Madisonville, Louisiana   70447

Expert testimony concerning vocational evaluation and opinions concerning
Ellis McClellan.

Mr. John Theriot
MALCOLM M. DIENES & COMPANY
301 Magazine Street, 2nd Floor
New Orleans, Louisiana   70130

Expert testimony concerning the economic impairment of Ellis McClellan
as a result of the injuries sustained from the alleged incidents complained
of herein.

George E. Duffy
Marine Consultant
110 James Drive West, Suite 120
St. Rose, Louisiana   70087

Expert testimony regarding safety operations.

Mr. James Heikkinen
Safety & Risk Management Review Services
P.O. Box 434
LaPlace, Louisiana   70069-0434

Expert testimony regarding safety operations.

## II.    MAY CALL

Kolbjorn Meek - address unknown

May be called to testify about the incident involving plaintiff and vessel procedure and condition.

Wilfredo Celda - address unknown

May be called to testify about the incident involving plaintiff and vessel procedure and condition.
Ove Olson - address unknown

May be called to testify about the incident involving plaintiff and vessel procedure and condition.

Jan Johansen - address unknown

May be called to testify about the incident involving plaintiff and vessel procedure and condition.
Dr. Mahmoud Daftary
1150 Robert Boulevard
Slidell, Louisiana

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

Dr. Robert Balkan
3434 Prytania Street, Suite 250
New Orleans, Louisiana 70115

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

Dr. Richard Levine
2820 Napoleon Avenue
New Orleans, Louisiana   70115

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

Dr. Joel Sacks
Tulane University Medical Group
Department of Ophthalmology
1415 Tulane Avenue
New Orleans, Louisiana   70112

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

Dr. Roland Duffour
1400 Highway 190 West
Slidell, Louisiana   70460

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

Dr. Michael N. Kleamenakis
3239 Gentilly Boulevard
New Orleans, Louisiana   70122

May be called to testify regarding the medical condition, treatment and recommendations as to Ellis McClellan.

B.L. Thornton - address unknown

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation.

Henry Glover
4923 Bonita Drive
New Orleans, Louisiana   70126

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation.

Glen Robb - address unknown

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation.
**DEFENDANT OBJECTS UNLESS ADDRESS IS GIVEN AND OPPORTUNITY TO DEPOSE**

22

Louis Mallary - address unknown

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation. **DEFENDANT OBJECTS UNLESS ADDRESS IS GIVEN AND OPPORTUNITY TO DEPOSE**

Erling Hval
1324 Sylvia Street
Metairie, Louisiana   70005

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation.

Robert Berard
714 Lake Avenue
Metairie, Louisiana    70005

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation.

E. Frdonk - address unknown

May be called to testify regarding operations and policies, the condition of the vessel herein, the alleged accident and all facts relevant to this litigation. **DEFENDANT OBJECTS UNLESS ADDRESS IS GIVEN AND OPPORTUNITY TO DEPOSE**

Any other physician who has treated plaintiff prior to or subsequent to the alleged accident herein

Any witness needed to identify and/or authenticate a document to be entered into evidence

Any witness to the alleged accident herein

Representative or employee of TTO

Representative of Leigh Hoegh & Co. Shipping A/S

Any witnesses listed or sought to be called by any other party.

23

Plaintiff reserves the right to add to and/or otherwise revise the foregoing list of witnesses as additional information may become available and/or as additional discovery may disclose and/or require due to the nature of this case.

**B.    BY THE DEFENDANT:**

**I.    WILL CALL:**

Mr. Erling Hval
1324 Sylvia Street
Metairie, LA 70005

Mr. Robert Berard
714 Lake Avenue
Metairie, LA 70005

Mr. Brian Jones
Technical Maritime Associates, Inc.
2908 Hessmer Avenue - Suite 1
Metairie, Louisiana 70002

**II.    MAY CALL:**

Captain Jan Johansen
Norway - address unknown

Dr. Jonathan Calkwood
2020 Gravier Street, Suite B
New Orleans, LA 70112

Mr. Thomas R. Daniel
c/o New Orleans Employers-International Longshoreman's Association
Suite 300, 147 Carondelet Street
New Orleans, LA 70130

Dr. Ellen Schneider
1415 Tulane Avenue
New Orleans, LA 70112

Dr. Urmila Kedia
1111 Medical Center Blvd., Suite 570
Marrero, LA 70072

Dr. Joel G. Sacks
1415 Tulane Avenue
New Orleans, LA 70112

Larry Stokes, Ph.D.
5020 Utica Street
Metairie, LA 70006

Dr. Mohamed Daftary
1150 Robert Blvd.
Slidell, Louisiana

Dr. Estaban Romano
1150 Robert Blvd.
Slidell, Louisiana

Dr. Richard Levine
2820 Napoleon Avenue, #500
New Orleans, LA  70115

A representative of Marine Medical Unit;

A representative of Leigh Hoegh & Co. Shipping A/S;

A representative of Benfield & Co.

Any witness necessary to authenticate documents; and

Any witness listed by any other party.

XIV.    This case will be tried to a jury.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five (5) working days prior to the trial date unless specific leave to the contrary is granted by the Court.

25

No memoranda or contentions of fact and law shall be required except as specifically ordered by the Court. If a party wishes to submit memoranda or suggested findings and conclusions, they should be presented prior to trial not less than five (5) working days prior to said trial.

XV.        The issues of liability will not be tried separately from quantum.

XVI.       There are no other matters that will help expedite a disposition of this case.

XVII.      The trial of this case will commence on the _____ day of _____, 2002, at _____ o'clock A.M. A realistic estimate of the number of trial days required is two to three.

XVIII.     This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to the signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

XIX.       Possibility of settlement of this case was considered.

New Orleans, Louisiana this _____ day of _____, 2002.

_____
JUDGE, U.S. DISTRICT COURT

Respectfully submitted,

BY: _____

THOMAS M. DISCON, T.A. (#14219)
JOHN G. DISCON, #4961
GREGORY T. DISCON, #22037
DISCON LAW FIRM
424 N. Causeway Boulevard
Mandeville, Louisiana 70448
Telephone: (985) 674-8748
Counsel for Plaintiff, Ellis McClellan


BY: _____

DAVID B. LAWTON, T.A. (# 8149)
ROBERT P. BLACKBURN (#24968)
TERRIBERRY, CARROLL & YANCEY, L.L.P.
3100 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3100
Telephone: (504) 523-6451
Telefax: (504) 524-3257
Attorneys for Leigh Hoegh & Co. Shipping A/S


BY: _____

ALAN G. BRACKETT (14094)
MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC
650 Poydras St., Ste. 2150
New Orleans, LA 70130
Attorney for Intervenor
Telephone: (504) 595-3000
Telefax: (504) 522-2121
Attorneys for Intervenor